OPINION
{¶ 1} Defendant-appellant, Changler Amilcar ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, which convicted appellant of improperly handling firearms in a motor vehicle, a fourth-degree felony and a violation of R.C. 2923.16, following a bench trial. For the following reasons, we affirm. *Page 2 
 {¶ 2} On March 22, 2007, the Franklin County Grand Jury issued an indictment against appellant for improperly handling firearms in a motor vehicle. Appellant pleaded not guilty.
 {¶ 3} On March 12, 2008, appellant moved to suppress the evidence against him, arguing that the stop precipitating his arrest "was not based upon probable cause." The court held a hearing on the motion on March 24, 2008.
 {¶ 4} Columbus Police Officer Ian Pruitt testified that, while on duty on March 12, 2007, he received a call concerning "a green Toyota that was driving around shooting rounds off." (Tr. 8.) He and his partner went to the area, looked for the car, and aired the description of a green Toyota and an occupant wearing a yellow shirt.
 {¶ 5} A short while later, Officer Pruitt and his partner did not find the car themselves, but arrived at the location where law enforcement officers from another precinct were removing suspects from a car that matched the description. The car was a green Toyota. Officer Pruitt could not recall whether any of the occupants of the car was wearing a yellow shirt at that time.
 {¶ 6} Columbus Police Officer Patrick Daugherty testified that, while on patrol duty on March 12, 2007, he received a call that shots had been fired from a dark-colored car with three occupants, one of whom was wearing a yellow shirt or a shirt with yellow sleeves. Once other officers stopped a car meeting that description, Officer Daugherty arrived at the scene to assist them. The car contained three occupants. Daugherty stated that "Officer Schwendeman said that he had located the gun, and so I went up, saw the gun that was under the right front passenger's seat. And there was also the yellow shirt sitting kind of tucked under the seat, but still it was showing." (Tr. *Page 3 
21.) Daugherty identified Exhibit 2, a white shirt with yellow sleeves, as the shirt that was under the seat. Officer Schwendeman removed the gun and the shirt from the car.
 {¶ 7} Daugherty stated that appellant was the driver of the car. He also stated that the front passenger said "that they were driving around firing off shots." (Tr. 26.)
 {¶ 8} Following closing remarks by counsel, the court stated: "Based on what I've heard so far, the State has met its burden with respect to the motion for suppression, and the defense's motion is hereby overruled." (Tr. 32-33.) The court proceeded immediately to discuss appellant's waiver of his right to a jury trial, to advise appellant concerning that waiver, and, ultimately, to accept appellant's waiver. Immediately after that discussion, the court heard a second motion to suppress, which related to a matter not at issue in this appeal. The court stated that it would take that motion under advisement and then stated that it "want[ed] to go back to the prior * * * motion for suppression." (Tr. 66-67.)
 {¶ 9} The court stated that it did "believe that the witnesses did have probable cause for making the stop." (Tr. 67.) In the court's view, there was a description of the vehicle, and that description matched the car in which appellant was the driver or a passenger. The court noted the officer's testimony that appellant was driving the car and the presence of the yellow shirt. The court concluded that "the officers had probable cause to stop the vehicle." (Tr. 67.)
 {¶ 10} The following day, after addressing the second motion to suppress and confirming appellant's waiver of his right to a jury trial, the trial got underway. Officer Pruitt was the State's first witness. Pruitt testified that, on March 12, 2007, he and his partner received a call that shots were fired in the Morse and Chesford area. They went *Page 4 
to that location and spoke to a witness, who gave them a description. They then aired the description of a car (a green Toyota) containing "a couple people on board, one with a yellow T-shirt." (Tr. 84.) A short time after that description aired, officers from another precinct indicated that they had made a possible stop of the vehicle. Pruitt and his partner then went to that location, which was about a half mile from where they had interviewed the witness. He also confirmed that the car matched the aired description.
 {¶ 11} Columbus Police Officer Tony Schwendeman testified. He stated that, while on duty on March 12, 2007, he received a call "about some kids shooting in the air or something like that, I believe." (Tr. 92.) A second call gave a description of a vehicle, "a green-colored Camry." (Tr. 94.) Schwendeman and his partner stopped a car meeting that description.
 {¶ 12} Schwendeman went to the driver side; his partner approached the passenger side. Schwendeman identified appellant as the driver. Schwendeman explained to appellant that there had been a report of shots fired and that his car matched the description. He asked appellant to step out of the car, and appellant did so. Schwendeman also asked if there was anything illegal in the car. Appellant said "`No. Go ahead. You look if you want.'" (Tr. 97.) Schwendeman walked to the passenger side of the car and saw a gun handle protruding from under the passenger seat. He also testified that he retrieved a white T-shirt with yellow sleeves from the car.
 {¶ 13} On cross-examination, Schwendeman testified that the description was of three black males, one wearing a red shirt and one wearing a white and yellow shirt. He agreed that, between the time of the initial call concerning shots fired and the time he and his partner stopped the vehicle, "a lot of things could have happened." (Tr. 106.) *Page 5 
Specifically, it was possible that individuals could have gotten into the vehicle after the shooting. When asked whether the gun would have been visible from the driver's seat, Schwendeman replied that it was hard to say, but "probably not." (Tr. 115.)
 {¶ 14} Officer Daugherty also testified again. Daugherty testified that, on March 12, 2007, he and his partner heard a dispatch concerning a shooting. Officers from another precinct stopped a vehicle meeting the aired description. The description was of "a dark-colored vehicle, possibly a Camry, and it had three individuals on board." (Tr. 121.) The individuals were black males, one wearing a yellow shirt.
 {¶ 15} When Daugherty and his partner arrived at the location where the car had been stopped, Officer Schwendeman and his partner had pulled behind a vehicle with three individuals on board. Daugherty identified the driver of the car as appellant, State's Exhibit 1 as the gun he saw protruding from the passenger seat, and State's Exhibit 2 as the shirt retrieved from the vehicle. He said that a passenger of the car told him "that during their route that they were driving, they were passing the gun around and firing rounds off out the windows." (Tr. 125.)
 {¶ 16} On cross-examination, Daugherty admitted that other individuals could have gotten into the vehicle between the time the first call was received and the time when the officers responded. He also confirmed that he did not interview any of the passengers.
 {¶ 17} Detective Beavers also testified. On March 12, 2007, Beavers, as part of the assault squad, received a call concerning a shooting. Beavers said that there were two crime scenes, the area where the car had been stopped and the area where the shooting had occurred. Beavers identified the gun and shirt retrieved from the car. No *Page 6 
fingerprints had been collected from the weapon because a passenger had already admitted to firing the gun.
 {¶ 18} Following this testimony and the admission of exhibits, the State rested. Appellant's counsel moved for acquittal pursuant to Crim. R. 29. He asserted that there had been no testimony that appellant had knowingly transported the firearm. The court denied the motion.
 {¶ 19} Appellant testified on his own behalf. A native of Haiti, appellant testified that, on March 12, 2007, he drove his girlfriend's car, a green Toyota Camry, to the store. En route, he saw a couple of people he knew, he stopped in a parking lot to talk to them, they got into the car, and the police cruiser pulled in behind them. One of the men was wearing a white and yellow shirt, and he got into the front passenger seat; the other man got into the back seat.
 {¶ 20} Appellant testified that Officer Pruitt told him he would be let go if he would "finger one of the other guys." (Tr. 178.) The officer also said that someone had already identified one of the other two men as the shooter. Appellant repeatedly told the officers that he did not know what was going on. After being transported to a police substation, officers attempted to interview appellant, but appellant did not respond to their questions. Counsel for the State played a video recording of a police interview with appellant. Following the playing of the video, appellant testified that the detective threatened him with criminal charges that would involve jail time, and appellant just told the detective "something he want[ed] to hear." (Tr. 202.) *Page 7 
 {¶ 21} Following appellant's testimony and the admission of exhibits, appellant rested. The following day, the court found appellant guilty of improperly handling firearms in a motor vehicle.
 {¶ 22} Appellant filed a timely appeal, and he raises the following assignments of error:
 ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING APPELLANT'S MOTION TO SUPPRESS[.]
 ASSIGNMENT OF ERROR II
 TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL TO HIS CLIENT AT THE MOTION TO SUPPRESS AND AT TRIAL.
 {¶ 23} By his first assignment of error, appellant asserts that the trial court erred by denying his motion to suppress. Specifically, appellant asserts that only two officers testified at the suppression hearing, neither of whom conducted the initial stop. Without the testimony of the officer who actually stopped the vehicle, appellant argues, the State did not meet its burden to prove that the officer had probable cause to make the stop.
 {¶ 24} The State responds, however, that an appellate court need not rely solely on the evidence presented at a suppression hearing. Rather, the appellate court also may rely on evidence presented at trial to determine whether probable cause existed. We agree.
 {¶ 25} In Carroll v. United States (1925), 267 U.S. 132, the defendant argued that the evidence presented on a motion to suppress was insufficient to establish probable cause to seize liquor. More evidence, however, had been presented at trial. The *Page 8 
Supreme Court of the United States stated: "If the evidence given on the trial was sufficient, as we think it was, to sustain the introduction of the liquor as evidence, it is immaterial that there was an inadequacy of evidence when application was made for its return. A conviction on adequate and admissible evidence should not be set aside on such a ground. The whole matter was gone into at the trial, so no right of the defendants was infringed." Id. at 162. Relying on Carroll, federal and state courts have held that an appellate court may consider evidence first produced at trial to support a trial court's denial of a motion to suppress. See, e.g., State v. Washburne (Iowa 1997), 574 N.W.2d 261,263-264, and cases cited therein. Here, we similarly conclude that we may consider evidence the State first produced at trial in determining whether the trial court erred in denying appellant's motion to suppress.
 {¶ 26} When presented with a motion to suppress, the trial court assumes the role of trier of fact. State v. Mills (1992),62 Ohio St.3d 357, 366. As such, the trial court is in the best position to resolve questions of fact and evaluate witness credibility. State v. Mayl,106 Ohio St.3d 207, 2005-Ohio-4629, ¶ 41, citing State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. On review, we must accept the trial court's factual findings if competent, credible evidence supports them. Accepting those facts as true, we must then independently determine whether, as a matter of law and without deference to the trial court's conclusion, whether those facts meet the applicable legal standard. Id.;State v. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 27} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable seizures of persons or property. State v. Mays, 119 Ohio St.3d 406,2008-Ohio-4539, ¶ 7. An automobile stop, with the *Page 9 
attendant temporary detention of its occupants, constitutes a seizure under the Fourth Amendment. Delaware v. Prouse (1979), 440 U.S. 648,653. In general, the Fourth Amendment precludes a police officer from seizing a person without a warrant unless the officer has probable cause to believe that that person has committed a felony. Beck v. Ohio (1964),379 U.S. 89, 91. Police officers need not have probable cause to detain a person in an investigatory stop, however. United States v.Brignoni-Ponce (1975), 422 U.S. 873, 881. Rather, they need only have a "reasonable and articulable suspicion that the person seized is engaged in criminal activity." Reid v. Georgia (1980), 448 U.S. 438, 440. In other words, a stop is reasonable under the Fourth Amendment when officers can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968), 392 U.S. 1, 21.
 {¶ 28} Here, Officer Pruitt testified that he received a dispatch concerning shots being fired. He and his partner went to the scene of the purported shots and interviewed a witness. Based on that interview, Pruitt aired a description of the car (a green Toyota) and its occupants (three black males, one wearing a yellow shirt or a shirt with yellow sleeves).
 {¶ 29} Ohio courts have held that officers without personal knowledge of specific facts establishing probable cause may rely on police dispatches to establish probable cause. See State v. Pettry (Aug. 9, 1990), Jackson App. No. 617, relying on Whiteley v. Warden (1971),401 U.S. 560. "When evidence is uncovered during a search incident to an arrest in reliance merely on a flyer or bulletin, its admissibility turns on whether the *Page 10 
officers who issued the flyer or bulletin possessed probable cause to make the arrest." (Emphasis sic.) Pettry, citing United States v.Hensley (1985), 469 U.S. 221, 231.
 {¶ 30} Here, appellant does not challenge the basis for the initial dispatch that shots had been fired or the basis for Pruitt's description of the vehicle and its occupants. For example, appellant does not challenge the veracity of the witness or the accuracy of the description. Instead, appellant challenges the lack of evidence concerning Schwendeman's basis for making the initial stop. We have already determined that we may consider evidence presented by the State for the first time at trial. Thus, we turn to Schwendeman's testimony.
 {¶ 31} At trial, Schwendeman testified that he heard the call regarding shots being fired in the area in which he was patrolling. He also heard the description of the vehicle as a green Camry. When he came upon appellant's vehicle, a green Toyota Camry, in that area, he said, "`That's the car right there, a Camry, green Camry.' So we made a stop on it." (Tr. 95.) Schwendeman saw the car within minutes of the dispatch airing the description, and the area in which he saw the vehicle was in close proximity to the area where the shots were purportedly fired. The car matched the description, as did its occupants.
 {¶ 32} Based on this evidence, we conclude that Officer Schwendeman cited specific and articulable facts that gave rise to a reasonable suspicion that the occupants of the vehicle, including appellant, were engaged or about to be engaged in criminal activity. The State having established a reasonable suspicion for the stop, we conclude that the trial court did not err in denying appellant's motion to suppress evidence obtained from the stop. Therefore, we overrule appellant's first assignment of error. *Page 11 
 {¶ 33} In his second assignment of error, appellant asserts that he received ineffective assistance from his trial counsel. We disagree.
 {¶ 34} The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 35} Appellant argues, first, that his trial counsel was ineffective because he failed to object to Officer Pruitt's testimony at the suppression hearing. Pruitt testified that Officer Schwendeman said he had located the gun in the car. Pruitt thereafter looked in the car and saw the gun and the shirt. Pruitt also testified that the front passenger said "that they were driving around firing off shots." (Tr. 26.) While appellant argues that these statements were inadmissible hearsay, the rules of evidence do not bar the admission of hearsay at a suppression hearing. State v. Woodring (1989), 63 Ohio App.3d 79, 80-81;State v. Goodman (June 9, 1994), Franklin App. No. 93APC11-1554. Thus, even if counsel had objected, the testimony still would have been admissible.
 {¶ 36} Appellant also asserts that this testimony violated his constitutional right to confrontation. In Crawford v. Washington (2004),541 U.S. 36, the United States *Page 12 
Supreme Court held that testimonial statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify and the defendant has had a prior opportunity for cross-examination. Appellant appears to contend that the passenger's out-of-court statement, as offered by Officer Pruitt at the suppression hearing, is "testimonial" underCrawford. Ohio courts have held, however, that "[t]he right to confrontation, which includes the right to physically face and cross-examine witnesses, is not a constitutionally compelled rule of pretrial proceedings." State v. Dunn, Washington App. No. 03CA47,2004-Ohio-2883, ¶ 11 (declining to order, on confrontation grounds, the disclosure of the identities of confidential informants), citingPennsylvania v. Ritchie (1987), 480 U.S. 39, 52-53. Accord State v.Miller, Guernsey App. No. 07 CA 11, 2008-Ohio-100, ¶ 16-17 (finding no confrontation violation where police officer's suppression hearing testimony included out-of-court statements by a confidential informant);State v. Massie, Ottawa App. No. OT-04-007, 2005-Ohio-1678, ¶ 16
(concluding that Crawford did not preclude officer's suppression hearing testimony concerning information provided to a police radio dispatcher). Appellant presents no case support for a contrary conclusion. Therefore, we decline to extend Crawford to pre-trial suppression hearings under the circumstances of this case.
 {¶ 37} Appellant also asserts that his counsel failed in his questioning of witnesses concerning the passenger's statement that they were firing shots, either by eliciting testimony that was ultimately unhelpful to appellant or by failing to question witnesses further. It is clear from the testimony, however, that appellant's counsel developed this line of questioning in an attempt to show that the other passengers were *Page 13 
firing the shots, and not appellant. That some of the testimony was ultimately unhelpful to appellant does not indicate ineffectiveness.
 {¶ 38} Appellant also asserts that his counsel should have requested findings of fact following the suppression hearing and should have renewed his motion to suppress at trial. We conclude, however, that appellant has not demonstrated that the outcome would have been different if appellant's trial counsel had done so. The trial court's findings are clear and definite from the record. Furthermore, as we have already determined, the evidence presented at trial established the officer's reasonable suspicion sufficient to make the stop. A renewed motion to suppress would not have been successful.
 {¶ 39} Appellant also asserts that defense counsel elicited testimony from appellant himself concerning a line-up identification. Appellant's testimony concerning a possible line-up is less than clear. What is clear, however, is that trial counsel pursued this line of questioning with appellant in order to develop the argument that officers were trying to coerce appellant into identifying one of the passengers as the person firing the gun. This was reasonable trial strategy.
 {¶ 40} Having examined the transcript of the suppression hearing and the trial, we conclude that appellant's trial counsel provided him effective assistance. Counsel was thoroughly engaged, made objections, presented legal arguments, and represented his client's interests zealously throughout the proceedings. We discern no support for appellant's contrary arguments. Therefore, we overrule appellant's second assignment of error. *Page 14 
 {¶ 41} In conclusion, we overrule appellant's first and second assignments of
error. We affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
McFARLAND, J., concurs. TYACK, J., concurs separately.
McFARLAND, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.