PRESENT:  All the Justices

FRANCISCO JAVIER GARCIA TIRADO

                                                    OPINION BY

v.  Record No. 170458                JUSTICE S. BERNARD GOODWYN
                                              August 9, 2018

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal of a judgment from the Court of Appeals, we consider whether a defendant's waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), was knowing and voluntary and whether an audiovisual recording of the defendant's statements made to police officers through an interpreter was properly admitted into evidence.

On March 30, 2015, a grand jury of the Circuit Court of Arlington County indicted Francisco Javier Garcia Tirado[1] (Tirado) for the rape of his minor cousin, "E.O.," in January 2015, in violation of Code § 18.2-61.  The case proceeded to a jury trial beginning on September 21, 2015.  The jury convicted Tirado of rape, and the court sentenced him to ten years' incarceration.  Tirado appealed to the Court of Appeals.  The Court of Appeals affirmed the conviction.

BACKGROUND

Detective Sandra Lafley (Detective Lafley), an officer in the special victims' unit of the Arlington County Police Department, interviewed both E.O. and Tirado on February 13, 2015.  Officer Samira DeNardo[2] (Officer DeNardo) translated during Lafley's interviews of E.O. and

---

[1] The record is unclear regarding the preferred or proper expression of the appellant's surname.  The record demonstrates that his name is variously rendered in short form as "Tirado," "Garcia Tirado," and "Garcia-Tirado."  We will refer to appellant herein as "Tirado," consistent with our order granting this appeal.

[2] Officer DeNardo was later promoted to deputy, but we refer to her by her title at the time of the events at issue in this appeal.

Tirado. Officer DeNardo is "fluent in English and Spanish." The police made an audiovisual recording of the entire interview with Tirado, which included Officer DeNardo's live translation of Detective Lafley's questions into Spanish and of Tirado's responses from Spanish into English (the recording).

The parties agree that, during the first three hours of the recording, which began at approximately 9 p.m., for the most part Tirado sat alone, but that the police offered Tirado food and drinks, escorted him to the bathroom when requested, and provided his jacket upon Tirado's request.

Detective Lafley entered the room at approximately 11:50 p.m. Detective Lafley also asked if Tirado needed a drink, and returned with a can of soda as he requested. She also asked if he wanted a snack, which he declined. At approximately 12:01 a.m., she asked if Tirado "need[ed] to go to the restroom or anything," and he replied, in Spanish, "No sé qué dice," which was translated in the transcript as "I don't know what she's saying."

Tirado had been communicating only in English until this time. Officer DeNardo then repeated Detective Lafley's question to him in Spanish, and Tirado responded in Spanish that he did not need to go to the bathroom. From this time until the end of the recorded interview, Tirado spoke in Spanish, Detective Lafley asked questions in English, and Officer DeNardo translated Detective Lafley's questions into Spanish and translated Tirado's responses into English.[3]

Detective Lafley asked if Tirado had any questions, and he asked, "What happened? Why did you bring me here?" Detective Lafley asked, "Do you want to talk about that?" and

---

[3] Tirado's statements are described herein as they were translated into English, rather than in their original Spanish.

Tirado said "Yes." Detective Lafley said they would "get into all these details," but "before we do that, I just want to read you this." Detective Lafley asked "Would you feel more comfortable if it was read to you in English or Spanish?" Tirado replied: "Uh, I think Spanish would be fine."

At approximately 12:12 a.m., Officer DeNardo read a *Miranda* waiver form, written in Spanish, to Tirado. Tirado followed along on the form as she read aloud in Spanish. After she read each right from the form, Officer DeNardo asked Tirado, "Do you understand?" and he replied, "Yes." Tirado signed the *Miranda* waiver form. Detective Lafley then asked Tirado to read the form back to her so she could "make sure he understands it." Tirado read the form aloud in Spanish. The officers asked again, "You understand it, right? Everything you've read?" and Tirado replied "Yes."

In the course of the interview, Tirado stated that, during an incident two to three weeks before the interview, Tirado was on top of E.O. and pulled her pants down, but did not hold her forcefully. When asked if "it's a possibility that you might've ejaculated inside her," he said "I think so."

At approximately 1:55 a.m., after collecting additional information about Tirado's employment, citizenship, and contact information, Detective Lafley stated, "I know that you feel bad about what happened. Do you want to write a letter to [E.O.]? Asking for forgiveness and apologizing?" Tirado responded, "That would be good." Detective Lafley stated: "You don't have to, but it's up to you. I'll leave it here for you, and I'll give you some time, okay?" She then asked, "Do you need anything? Any snacks, anything to drink?" and Tirado replied, "No. I think I'm okay." The officers did not make any comment about which language he should use to

3

write the letter. The officers then left Tirado alone to write the letter, and the recording ended. Tirado wrote an "apology letter" to E.O. in Spanish.

*Suppression Hearing*

On August 26, 2015, Tirado filed a motion to suppress statements he made during the police interrogation. He argued that the statements were "obtained involuntarily and in violation of [his] due process rights under the Fifth and Fourteenth Amendment[s]," and that he "did not make a knowing and intelligent waiver" of his rights under *Miranda*. More specifically, he claimed that his "language skills, unfamiliarity with the American justice system, and alienage prevented him from executing a valid waiver of his *Miranda* rights." He alleged that the police used Spanish to explain his *Miranda* rights, rather than Mam, his native Mayan language in Guatemala. The circuit court held a suppression hearing on September 9, 2015.

The Commonwealth offered a copy of the recorded interview into evidence. Detective Lafley testified that it was a fair and accurate recording of the interview. Tirado did not object to the "physical evidence, that being . . . the recording," but did object "because we anticipate that they are going to play the recording[ ] without the police officer who interpreted present." Specifically, he argued that, first, there was a lack of foundation "as to the veracity or the correctness of the interpretation," because there was no basis to determine "whether what is being said by Detective Lafley is actually being conveyed to [Tirado] and what [Tirado] says is accurately conveyed back to Detective Lafley." Second, he argued that the statements were hearsay, because the translator, Officer DeNardo, was "saying this is what [Tirado] says," and her statements were offered for their truth.[4]

---

[4] Tirado also argued that the testimony violated the Sixth Amendment Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36 (2004), because he was denied an opportunity to cross-examine an individual (Officer DeNardo) providing testimony against him.

The circuit court admitted the recording into evidence and viewed the portion corresponding to Tirado's interview.[5]

The Commonwealth stipulated to the admissibility of the apology letter Tirado wrote at the conclusion of the interview. The letter was written in Spanish. Tirado then called Alexander Orosco (Orosco), an investigator in the public defender's office, as a witness. Orosco, a native Spanish speaker, was qualified as a subject matter expert in the Spanish language. He identified spelling and capitalization errors in the apology letter written by Tirado. On cross-examination, Orosco acknowledged that he was still able to read the letter despite the errors, and that it is "not unusual for somebody who speaks Spanish, you could carry on a conversation but that person might have difficulty writing" in Spanish due to a lack of education or practice.

On September 15, 2015, the circuit court issued a letter opinion denying the motion to suppress. The court noted Tirado's "comfort using Spanish" and no sign of a "lack of understanding" on viewing the recording. It found by a preponderance of the evidence that Tirado understood his rights. It also found that there was no coercion, because Tirado was "fed and hydrated, as he would have requested" during the interview, and his interview was delayed because the police interviewed E.O. first, and not due to a nefarious or improper purpose.

*Jury Trial*

At trial, Detective Lafley testified that the recording "fairly and accurately represent[s] what went on" during the police interview of Tirado, and that the transcript corresponds to the

---

He does not assert any arguments based on the Confrontation Clause on appeal, however, so we do not address it in our analysis. Rule 5:27(c), (d).

[5] The transcript of the video, which includes side-by-side translations of Tirado and Officer DeNardo's statements from Spanish to English, was not admitted into evidence at the suppression hearing, but it was later admitted at trial.

recording. Tirado objected that a foundation had to be laid that the transcript of the recording is accurate. Tirado stated that he did not "object to the authenticity—the admission of the evidence of the recording," but "I haven't stipulated or I haven't concurred as to what it says," and that he "objected to this before with regards to the motion to suppress." The court admitted the recording into evidence, noting that the transcript could be admitted after Officer DeNardo testified to the accuracy of the translation in the transcript.

Detective Lafley testified that, on February 13, 2015, she arranged for E.O. and Tirado to be brought in for interviews after a report from E.O.'s counselor. She stated that she first spoke with E.O. and her mother, and that Officer DeNardo translated during that interview. She stated that she then interviewed Tirado and presented a *Miranda* waiver form to Tirado. The circuit court admitted the *Miranda* waiver form over Tirado's objection for a lack of foundation. One side of the waiver form is in English, and the other side is in Spanish. Tirado signed the Spanish side of the form under the statement that he "had the foregoing rights read to me. I understand what has been told to me."

Officer DeNardo testified that she is fluent in English and Spanish. She stated that she translated for Detective Lafley during the interview of Tirado, and that the transcript of the interview based on the recording was an accurate translation. During a *voir dire* by Tirado, Officer DeNardo affirmed that she reviewed the entire transcript of Tirado's interview and that it was accurate. The circuit court admitted the transcript into evidence over Tirado's objection regarding the foundation for the accuracy of the translation. Later in the trial, the Commonwealth noted that Tirado had not objected to the accuracy of the transcript of the interview from the recording, and argued that Tirado "has waived any type of argument that he

6

can make about its accuracy." Tirado responded that he would not argue about the accuracy of the transcript, but would "argue as to his understanding of what was said."

Tirado called Orosco, and the Commonwealth objected that his testimony would not be relevant or admissible. The circuit court ruled that Orosco could interpret the apology letter, which had already been admitted into evidence, but could not testify about Tirado's "level of speaking or understanding Spanish based upon" the letter, and allowed Tirado to proffer Orosco's testimony outside the presence of the jury. Orosco's proffered testimony was that he found 22 spelling and grammatical errors in the apology letter.

Tirado testified through an interpreter that he was from Guatemala, and his native language is Mam.[6] He stated that he was 19 years old, and came to the United States at age 17. He denied raping E.O. He said that he was "scared" when the police brought him in for an interview. He acknowledged that he wrote the apology letter to E.O., "but it took me so long to write that because I couldn't really understand what I was going to write."

On cross-examination, Tirado stated that he spoke Mam from age one to age six, "and then from six to right now, I speak Spanish."

*Appeal to the Court of Appeals*

On March 7, 2017, the Court of Appeals affirmed Tirado's conviction in an unpublished memorandum opinion. *Garcia-Tirado v. Commonwealth*, Record No. 1982-15-4, 2017 Va. App. LEXIS 60 (March 7, 2017). It stated that, during the interview with the police, Tirado "communicated in English at some points, but at all other times in Spanish," and his "answers to the questions were responsive and consistent with the question asked." *Id.* at *3-4. It observed

---

[6] The trial transcript references an interpreter for Tirado's testimony, but does not reveal whether Tirado spoke Mam or Spanish at trial.

that the circuit court "reviewed the . . . interview [on the recording] and noted appellant's demeanor and level of comfort conversing in Spanish." *Id.* at *6. It noted that Tirado "gave no indication that he did not understand the questions posed to him, and his answers in Spanish were responsive and consistent with the questions asked." *Id.* at *7.

The Court of Appeals concluded that, "[w]hen weighed against the other evidence in the case, the spelling and grammatical errors in his written apology letter do not show he did not understand Spanish or the words he selected to write the letter," *id.* at *7, and, although the form was only admitted at trial, the "signed form, written in both Spanish and English, clearly shows appellant knowingly and voluntarily waived his *Miranda* rights." *Id.* at *8.

Tirado appeals. The assignments of error are:

> I. The Court of Appeals erred in denying appellant's petition where the trial court erred in admitting the videotaped statements of appellant's interrogation without the testimony of the interpreter who interpreted the questions to the appellant and the responses of the appellant.

> II. The Court of Appeals erred in upholding on appeal the trial court's finding that appellant's waiver of *Miranda* was knowingly and voluntarily made.

ANALYSIS

Tirado's first assignment of error challenges the admission of the recording at the suppression hearing without testimony by the interpreter. He asserts that, "without the testimony of the interpreter who interpreted the questions to appellant and the responses of the appellant[,] [those] statements [on the recording] were objectionable based upon hearsay and lack of foundation." He claims that it was erroneous for the Court of Appeals to consider evidence adduced at trial, in addition to the evidence presented at the suppression hearing, in upholding the denial of the motion to suppress for violation of *Miranda* under the Fifth Amendment. We disagree.

8

At the outset, we note that, although Tirado argues that the recording should not have been admitted, he does not assign error to the actual denial of his motion to suppress, nor does he contest the content or adequacy of the *Miranda* waiver form. We also note that, in reviewing the denial of Tirado's motion to suppress the recording and the determination that the waiver of his *Miranda* rights was knowing and voluntary, it is proper for an appellate court to consider the whole record, and not merely the evidence presented at the suppression hearing.

"When considering whether to affirm the denial of a pretrial suppression motion, an appellate court reviews not only the evidence presented at the pretrial hearing but also the evidence later presented at trial." *Commonwealth v. White*, 293 Va. 411, 414, 799 S.E.2d 494, 495 (2017) (stating the standard of review for a case challenging a search and seizure of drugs under the Fourth Amendment); *see also Brooks v. Commonwealth*, 282 Va. 90, 93-95, 712 S.E.2d 464, 465-66 (2011) (considering evidence from a "combined suppression hearing and trial" when reviewing denial of motions to suppress under the Fifth and Sixth Amendments). Accordingly, in a review of a denial of a motion to suppress for alleged violations of the Fifth Amendment, we consider the record from the suppression hearing as well as the record from the trial.[7]

_____

[7] Both federal and state courts have concluded that, in a review of a denial of a motion to suppress for alleged violations of the Fifth Amendment, an appellate court considers the record from the suppression hearing as well as the record from the trial. *See, e.g.*, *United States v. Cash*, 733 F.3d 1264, 1276 (10th Cir. 2013) (noting that, "when reviewing the district court's order denying a motion to suppress statements under the Fifth Amendment, . . . we are permitted to consider the evidence introduced at the suppression hearing, as well as any evidence properly presented at trial") (citations, alterations, and internal quotation marks omitted); *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007) (reviewing cases from the Third, Fifth, Eighth, and Tenth Circuit Courts of Appeals to support the conclusion that, when reviewing the denial of a motion to suppress statements under the Fifth Amendment, "we review the entire record, including trial testimony"); *State v. Washburne*, 574 N.W.2d 261, 263-64 (Iowa 1997) (stating that, in a case involving a challenge to the admissibility of the defendant's statements on Fifth and Fourteenth Amendment grounds, "in determining whether the court erred in overruling the

In doing so, we follow the approach of the Supreme Court of the United States in *Carroll v. United States*, 267 U.S. 132 (1925), a case challenging a search and seizure of illegal liquor on Fourth Amendment grounds. The Supreme Court ruled that the evidence for a pre-trial motion to return the liquor to its owner was irrelevant, because the evidence at trial supported the denial of the motion:

> Counsel finally argue that the defendants should be permitted to escape the effect of the conviction because the court refused on motion to deliver them the liquor when, as they say, the evidence adduced on the motion was much less than that shown on the trial, and did not show probable cause. The record does not make it clear what evidence was produced in support of or against the motion. But, apart from this, we think the point is without substance here. *If the evidence given on the trial was sufficient, as we think it was, to sustain the introduction of the liquor as evidence, it is immaterial that there was an inadequacy of evidence when application was made for its return.* A conviction on adequate and admissible evidence should not be set aside on such a ground. *The whole matter was gone into at the trial, so no right of the defendants was infringed.*

*Id.* at 162 (emphases added).

*1. Admission of recording*

"[T]he admissibility of evidence is within the discretion of the trial court and we will not reject the decision of the trial court unless we find an abuse of discretion." *Midkiff v. Commonwealth*, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010).

> Naturally, the law often circumscribes the range of choice available to a court in the exercise of its discretion. In such cases, the abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions, because a court also abuses its discretion if it inaccurately ascertains its outermost limits.

---

motion to suppress we may consider not only the evidence adduced in the motion to suppress but the later trial testimony") (citation and internal quotation marks omitted) (overruled, in part, on unrelated grounds by *State v. Palmer*, 791 N.W.2d 840, 847 n.2 (Iowa 2010)); *Henry v. State*, 468 So. 2d 896, 899 (Ala. Crim. App. 1984) (concluding that, when reviewing the admissibility of a statement made after an allegedly deficient *Miranda* waiver, "we are not limited merely to that evidence presented at the suppression hearing, but may also consider the testimony given before the jury").

*Lawlor v. Commonwealth*, 285 Va. 187, 213, 738 S.E.2d 847, 861 (2013) (citations, alteration, and internal quotation marks omitted).

Rule 2:901 generally provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims."

Specifically regarding the admission of videotape evidence, "[o]rdinarily, the admissibility of videotape films is governed by the same rules which apply to the admission of photographs or motion pictures." *Stamper v. Commonwealth*, 220 Va. 260, 271, 257 S.E.2d 808, 816 (1979). "A photograph which is verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence and . . . it need not be proved by the photographer who made it." *Bailey v. Commonwealth*, 259 Va. 723, 738, 529 S.E.2d 570, 579 (2000) (citations, alteration, and internal quotation marks omitted).

At the suppression hearing, as well as at trial, Detective Lafley testified that the recording accurately depicted her interview with Tirado. No more evidence was needed to "support a finding that the thing in question"—here, the recording of the interview—"is what its proponent claims" as required by Rule 2:901. Tirado waived his argument that the recording contained inadmissible hearsay, because he did not object to the admission of the transcript of the recording on hearsay grounds at trial. In addition, Officer DeNardo testified at trial that she was fluent in Spanish and English, her translation was accurate as depicted in the recording, and the statements made on the recording had been transcribed accurately. Officer DeNardo's testimony further established the foundation of the recording and transcript as accurate translations of the statements she and Tirado made. Accordingly, we hold that the circuit court did not abuse its

11

discretion in concluding that there was an adequate foundation to admit the recording of the interview into evidence.

2. *Waiver of rights under Miranda*

Tirado's second assignment of error contends that the Court of Appeals erred in upholding the circuit court's finding that his *Miranda* waiver was knowing and voluntary. He argues that there was no evidence that he received any *Miranda* warning, because at the suppression hearing, "the translator (Officer DeNardo) was not present and the alleged *Miranda* advisement and interrogation of [Tirado] were not translated for the court." He asserts that, even considering the entire record and evidence presented at trial, there is insufficient evidence that he knowingly and voluntarily waived his rights. Again, we disagree.

A person may waive his rights under *Miranda* "if the waiver is made knowingly and intelligently," and the Commonwealth "bears the burden of showing a knowing and intelligent waiver." *Angel v. Commonwealth*, 281 Va. 248, 257-58, 704 S.E.2d 386, 392 (2011). "[W]hether the waiver was made knowingly and intelligently is a question of fact," and the circuit court's determination on this issue "will not be set aside on appeal unless plainly wrong." *Id*. at 258, 704 S.E.2d at 392. On the other hand, whether a statement was voluntary is a "legal rather than factual question." *Gray v. Commonwealth*, 233 Va. 313, 324, 356 S.E.2d 157, 163 (1987) (citations omitted). Thus, whether a waiver of *Miranda* was "made voluntarily, knowingly, and intelligently" has two components:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

12

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citations and internal quotation marks omitted).

The "test to be applied in determining voluntariness is whether the statement is the product of an essentially free and unconstrained choice by its maker, or whether the maker's will has been overborne and his capacity for self-determination critically impaired." *Gray*, 233 Va. at 324, 356 S.E.2d at 163 (citations and internal quotation marks omitted). "In determining whether a defendant's will has been overborne, courts look to the totality of all the surrounding circumstances, including the defendant's background and experience and the conduct of the police." *Id*. (citations and internal quotation marks omitted).

Regarding voluntariness, in the present case there is no evidence or assertion that Tirado's waiver of *Miranda* was the product of "intimidation, coercion, or deception." Although he had to wait alone in an interrogation room for nearly three hours while Detective Lafley interviewed E.O., the police offered Tirado food and drinks on several occasions throughout the waiting and interview process. The police escorted him to the restroom upon his request. The police provided his jacket upon his request. During the two-hour interview, Detective Lafley and Officer DeNardo sat several feet away from Tirado and did not use violence or threats against him, and the circuit court found that there was no coercion during the interview.

The knowing and intelligent requirement of a *Miranda* waiver focuses on whether the defendant comprehended the plain meaning of the required warnings. *United States v. Yunis*, 859 F.2d 953, 964-65 (D.C. Cir. 1988). Some of the circumstances to be considered in this analysis are the defendant's age, education, language, alienage, experience with police, and whether the defendant stated that he understood his rights as read to him. *Gray*, 233 Va. at 324-25, 356 S.E.2d at 163; *Angel*, 281 Va. at 258-59, 704 S.E.2d at 392-93. "[W]hether [the defendant] fully appreciates the beneficial impact on his defense that silence may have—whether

13

he fully understands the tactical advantage, in our system of justice, of not speaking—does not affect the validity of his waiver." *Yunis*, 859 F.2d at 965. Indeed, the Supreme Court has "not held that the *sine qua non* for a knowing and voluntary waiver . . . is a full and complete appreciation of all of the consequences flowing from the nature and the quality of the evidence in the case." *Oregon v. Elstad*, 470 U.S. 298, 317 (1985).

As noted above, the circuit court properly admitted the recording of Tirado's interview into evidence. It properly considered that evidence in determining whether Tirado waived his *Miranda* rights. Regarding the "knowing and intelligent" requirement, the circuit court was not plainly wrong in concluding that Tirado waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," and thus had the "requisite level of comprehension." There is ample evidence to support the circuit court's conclusion that Tirado comprehended Spanish well enough to understand his rights as stated on the *Miranda* waiver form.

First, Tirado chose to communicate in Spanish. All of Tirado's exchanges with the police prior to the start of Detective Lafley's interview were conducted in English. Tirado was the first person to use a language other than English as Detective Lafley began her interview. However, Tirado did not switch to his native language, Mam. Instead, Tirado responded in Spanish to Detective Lafley's English questions. He said that Spanish "would be fine" to discuss the *Miranda* waiver form. Without any prompting by the police, Tirado chose to write his apology note to E.O. in Spanish, not Mam, and he had been speaking Spanish for 12 years. On this record, even though Spanish was not his native language, it was his language of choice, and he understood it well enough to comprehend his rights under *Miranda*.

14

Second, Officer DeNardo read the *Miranda* waiver form to Tirado in Spanish, and asked him if he understood each right after she read it. Tirado responded that he understood each right. Detective Lafley then asked Tirado to read the entire form aloud, and he did so in Spanish. *See Angel*, 281 Va. at 258-59, 704 S.E.2d at 392-93. Tirado then signed the Spanish version of the waiver form and continued to talk with the officers in Spanish for nearly two hours. There was no allegation that the content of the *Miranda* warning was inadequate.

Third, the circuit court reviewed the recording and transcript of the interview, and could see, hear, and read that Tirado responded appropriately to Detective Lafley's translated questions over the course of a lengthy interview. This demonstrated his understanding of the questions. In light of the recording, transcript, and testimony of the police officers, the circuit court was not bound to accept Tirado's self-serving testimony at trial that he "didn't understand anything at all" during the interview.

Finally, although Tirado places great weight on the grammatical errors in his apology note to establish that he does not understand Spanish, his ability to write in Spanish does not necessarily correspond to his ability to read Spanish, much less speak it. Tirado's own witness and a court interpreter both translated his apology note from Spanish to English, so whatever errors the note contained did not render it incomprehensible. Orosco also acknowledged that someone could speak and understand Spanish but have difficulty writing in Spanish.

Thus, the record supports the circuit court's finding that Tirado had the requisite level of Spanish comprehension to make a knowing and intelligent waiver of his *Miranda* rights. The Court of Appeals did not err in upholding the circuit court's ruling that Tirado voluntarily, knowingly, and intelligently waived his rights under *Miranda*.

CONCLUSION

For the foregoing reasons, the Court of Appeals did not err by affirming Tirado's conviction after finding no error in either the circuit court's decision to admit into evidence the recording of Tirado's interview with the police officers, or its finding that Tirado's waiver of his *Miranda* rights was done voluntarily, knowingly, and intelligently. Accordingly, we affirm the judgment of the Court of Appeals upholding this conviction.

*Affirmed*.